UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
LAREDO DIVISION

| | | |
|---|---|---|
| **GREGORIO GARZA, JR.,** | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| **VS.** | § | **CIVIL ACTION NO. L-04-137** |
| | § | |
| **LAREDO INDEPENDENT SCHOOL** | § | |
| **DISTRICT,** | § | |
| | § | |
| *Defendant.* | | |

<u>OPINION & ORDER</u>

Pending before the Court is Defendant Laredo Independent School District's (hereinafter "LISD") Second Motion for Summary Judgment. [Dkt. No. 64]. Having duly reviewed the petition, supporting memorandum, and applicable law, LISD's Motion is hereby GRANTED.

**I.     PROCEDURAL HISTORY AND RELEVANT FACTS**

Plaintiff Gregorio Garza, Jr. ("Garza") was born in Laredo, Texas, and is a United States citizen residing in Mexico. [Dkt. No. 77 at 4]. He is a schoolteacher at the Vidal M. Trevino School of Communication and Fine Arts (hereinafter "VMT") and current employee of LISD. [*Id.*]. On January 20, 2004, Garza filed a discrimination claim against LISD with the Equal Employment Opportunity Commission (hereinafter "EEOC") and the Texas Commission on Human Rights (hereinafter "TCHR"). Garza was issued a right to sue letter in August 2004. [Dkt. No. 64-6 at 33]. Proceeding as a *pro se* litigant,[1] Garza filed suit against LISD in this Court on September 22, 2004 for discrimination based on national origin and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. (hereinafter "Title VII") and its state equivalent, the

---

[1] Because Garza is *pro se*, the Court will construe his filings liberally and will hold him to a less stringent standard. *See Haines v. Kerner*, 404 U.S. 519, 520 (1972). Nevertheless, while *pro se* filings are construed liberally, a *pro se* plaintiff is required to comply with the mandates of the local rules as well as the Federal Rules of Civil Procedure.

Texas Commission on Human Rights Act (hereinafter "TCHRA").  [Dkt. Nos. 1 at 2, 46 at 1].  In his Complaint, Garza alleges that LISD: (1) discriminated against him and subjected him to different terms, conditions, and unfair treatment on account of his "Hispanic, Mexican national origin"; (2) subjected him to an environment that "negatively [impacted his] work conditions"; and (3) retaliated against him after he complained to LISD's Board of Trustees.  [Dkt. No. 1 at 2].  In his complaint to the EEOC, he cited July 20, 2003 as the earliest date on which discrimination occurred.  [*Id.*].  However, on May 5, 2006, Garza filed a More Definitive Statement, in which he sets out numerous instances of alleged discrimination occurring throughout his employment.  [Dkt. No. 46].

LISD filed a Motion for Partial Summary Judgment on June 7, 2006, focusing its briefing on the meaning of "adverse employment action" under Fifth Circuit jurisprudence.  [Dkt. No. 50].  On February 23, 2007, Magistrate Judge Diana Saldaña issued a Report and Recommendation in which she pointed out that the United States Supreme Court had recently rejected the Fifth Circuit's "ultimate employment decision" standard, [Dkt. No. 58 at 10-11 (citing *Burlington N. & Santa Fe Ry. Co. v. White*, 126 S. Ct. 2405, 2414, 2416 (2006))], which limits actionable retaliatory conduct to acts "such as hiring, granting leave, discharging, promoting, and compensating."  S*ee White*, 126 S. Ct. at 2410 (quoting *Mattern v. Eastman Kodak Co.*, 104 F.3d 702, 707 (5th Cir. 1997)). Because neither party addressed the impact, if any, of *White* on the instant case, Judge Saldaña denied LISD's motion without prejudice to refiling a motion that would incorporate the current legal standard on what constitutes an "adverse employment action."   [Dkt. No. 58 at 10-11]. Having accepted Judge Saldaña's Report and Recommendation on March 8, 2007, this Court issued an order allowing LISD to file an updated summary judgment motion should it choose to do so. [Dkt. No. 59].  In its pending summary judgment motion, LISD asks the Court for a judgment on the pleadings or alternatively, for summary judgment on all of the claims of discrimination and

retaliation that Garza raises in his Complaint, [Dkt. No. 1], and More Definite Statement, [Dkt. No. 46].

## II.    DISCUSSION

### A.    Summary Judgment Standard

Summary judgment is appropriate only when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and identifying those portions of the record "which [the moving party] believes demonstrates the absence of a genuine issue of material fact" with respect to issues on which the movant bears the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 327 (1986); *Martinez v. Schlumber, Ltd.*, 338 F.3d 407, 411 (5th Cir. 2003). The movant meets its initial burden by showing that the "evidence in the record would not permit the nonmovant to carry its burden of proof at trial." *Smith v. Brenoettsy*, 158 F.3d 908, 911 (5th Cir. 1998). While a genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party[,]" *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986), the moving party need not negate the elements of the nonmovant's case. *Wallace v. Texas Tech Univ.*, 80 F.3d 1042, 1047 (5th Cir. 1996). The Court reviews the record by drawing all inferences most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (citing *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)).

The moving party cannot satisfy its initial burden simply by setting forth conclusory statements that the nonmoving party has no evidence to prove its case. *Ashe v. Corley*, 992 F.2d 540, 543 (5th Cir. 1993). If the moving party can meet the initial burden, the burden then shifts to the nonmoving party to establish the existence of a genuine issue of material fact for trial. *Norman*

*v. Apache Corp.*, 19 F.3d 1017, 1023 (5th Cir. 1994).  Federal Rule of Civil Procedure 56(e)(2) indicates that "an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must . . . must set out specific facts showing a genuine issue for trial."

Assuming that no genuine issue exists as to the material facts, the Court will then decide whether the moving party shall prevail solely as a matter of law.  *Id.*  The moving party is entitled to judgment as a matter of law if "the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof."  *Celotex*, 477 U.S. at 323.  With specific references to the record, LISD thoroughly supports its basis for arguing the absence of genuine fact issues with regard to all of Garza's claims.  Thus, Garza bears the burden of demonstrating how his evidence indeed warrants a trial.

### B.    Exhaustion of Administrative Remedies

LISD argues that Garza "did not timely exhaust [the] administrative remedies as to [his] discrimination or retaliation claims for any discriminatory or retaliatory actions by LISD which occurred prior to July 20, 2003"—the date that Garza identified in his Charge of Discrimination as the earliest date on which discrimination took place.  [Dkt. No. 64 ¶ 39].  Specifically, LISD claims that it was not put on notice of the alleged discriminatory or retaliatory actions which occurred before July 20, 2003.  [Dkt. No. 64 ¶ 46].  Thus, LISD urges the Court not to consider Garza's statements "contained in other documents submitted by him to the EEOC for purposes of determining the scope of his charge of discrimination or retaliation."  [*Id.* ¶ 44].

LISD correctly points out that "[e]mployment discrimination plaintiffs must exhaust administrative remedies before pursuing claims in federal court."  [Dkt. No. 64-1 ¶ 40 (quoting *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378-79 (5th Cir. 2002))].  Before an aggrieved person may file a civil suit under Title VII, the following prerequisites must be met: (1) the timely filing of an EEOC charge; (2) the EEOC's dismissal of that charge or the lapse of 180 days in which the

EEOC has neither filed a civil action nor reached a conciliation agreement on the individual's behalf; (3) the EEOC's notification that the individual has the right to bring a private action; and (4) the filing of a court action within 90 days from the EEOC's notification.  *See* § 2000e-5(e), (f).

The Court begins its analysis by noting that in one part of his charge, Garza alleges that LISD engaged in discriminatory acts beginning on July 20, 2003.  However, in the body of the charge, Garza claims that he has suffered discrimination "throughout [his] employment."  [Dkt. No. 46 at 2].  Additionally, in his More Definitive Statement, Garza describes discriminatory treatment over a period of ten years, and refers to instances of disparate treatment taking place in 2002 and early 2003.  [*Id.* at 1, 2].  While Garza's complaint may have created some confusion as to the timeframe involved, the Fifth Circuit has held that because a primary purpose of Title VII is to "trigger the investigatory and conciliatory procedures of the EEOC," the proper scope of a Plaintiff's Title VII claim is determined "by the scope of the EEOC investigation which 'can reasonably be expected to grow out of the charge of discrimination.'"  *Pacheco v. Mineta*, 448 F.3d 783, 789 (5th Cir. 2006) (quoting *Sanchez v. Standard Brands, Inc.*, 431 F.2d 455, 463 (5th Cir. 1970)).  The Court finds that Garza's claims before this Court are within the scope of the EEOC complaint.

A different but related issue pertains to Garza's claims that he has suffered discrimination throughout his employment.  An individual claiming discrimination in violation of Title VII must file a charge of discrimination with the EEOC within 300 days "after the alleged unlawful employment practice occurred."  42 U.S.C. § 2000e-5(e)(1); *see also E.E.O.C. v. WC&M Enters.*, 496 F.3d 393, 398 (5th Cir. 2007).  Garza filed his complaint with the EEOC and the TCHR on January 20, 2004.  Thus, under the statute, any claims occurring before March 27, 2003 (300 days before Garza filed with the EEOC) would be time barred.

However, under the continuing violations doctrine, the Court is able to consider those claims falling outside of the permissible time period if LISD's alleged discriminatory acts constituted a pattern of discriminatory behavior.  The Fifth Circuit has consistently held that the continuing violations doctrine is equitable in nature and extends the limitations period on otherwise time-barred claims only when the unlawful employment practice manifests itself over time, rather than as a series of discrete acts.  *Frank v. Xerox Corp.*, 347 F.3d 130, 136 (5th Cir. 2003); *see also Huckabay v. Moore*, 142 F.3d 233, 238-39 (5th Cir. 1998).  In *National R.R. Passenger Corp. v. Morgan*, the Supreme Court clarified the limits of the continuing violations doctrine by stating that discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges.  536 U.S. 101, 113 (2002).  Consequently, each discriminatory act starts a new clock for filing charges alleging that act.  *Id.*  In contrast to discrete acts, the Court carved out an exception for claims based on a hostile work environment.  Noting that repeated conduct is inherently a part of hostile work environment claims, the Court held that those types of claims "will not be time barred so long as all acts which constitute the claim are part of the same unlawful practice and at least one act falls within the time period."  *Id.* at 122.  Therefore, *Morgan* makes clear that claims based on discrete acts are timely only where such acts occurred within the limitations period, and that claims based on hostile environment are only timely where at least one act occurred during the limitations period.

If Garza can show that the alleged discriminatory conduct comprises a serious of related acts within the restrictions delineated in *Morgan*, he does not need to establish that all of the discriminatory conduct occurred within the actionable period.  *See Celestine v. Petroleos de Venez., S.A.*, 266 F.3d 343, 351 (2001) (citing *Messer v. Meno*, 130 F.3d 130, 135 (5th Cir. 1997)).  However, because Garza's allegations of discrimination are somewhat disorganized and void of clarity, the Court cannot definitively conclude that his individual claims are part of the same

unlawful practice of which he complains.  Nevertheless, the defendant has the affirmative duty to show that the claims it wishes the Court to exclude are outside of the statutory time frame.  Because the Court finds that LISD failed to make this showing, the Court will presume that Garza's claims are sufficient to establish a pattern of conduct that as a whole encompasses the hostile work environment claim.  Thus, the Court will consider the allegations that would otherwise be time barred.

Moreover, the Court finds that the other prerequisites for filing suit in federal court under Title VII have been met.  On July 15, 2004, the Texas Workforce Commission informed Garza in writing that 180 days had passed since the filing of his complaint, thereby notifying him of his right to request a Notice of Right to Sue in Federal Court from the EEOC.  [Dkt. No. 50-7 at 12].  Additionally, Garza filed suit with this Court on September 22, 2004, thereby complying with the 90-day deadline for filing suit from the date of receipt of the right-to-sue notice, which he received on August 13, 2004.  [*See* Dkt. No. 1 at 3].

The Court finds that LISD has failed to provide sufficient summary judgment evidence to demonstrate that Garza failed to exhaust his administrative remedies.  As such, the Court denies LISD's motion for summary judgment as to any acts occurring prior to July 20, 2003 and, to the extent that they are part of a continuing violation, to any acts occurring more than 300 days before January 20, 2004.  Nonetheless, for reasons stated elsewhere in this opinion, the Court finds that Garza's allegations are insufficient to establish a viable claim of employment discrimination based on a hostile work environment and retaliation.  Having determined that summary judgment is not warranted for failure to exhaust administrative remedies, the Court now turns to analyze Garza's claims of employment discrimination.

### C.        Employment Discrimination Under Title VII

Garza's discrimination claim implicates two parts of Title VII: the substantive provision, 42 U.S.C. § 2000e-2(a), and the anti-retaliation provision, 42 U.S.C. § 2000e-3(a). The substantive provision makes it unlawful for an employer to discriminate against any employee based on the employee's race or national origin. 42 U.S.C. § 2000e-2(a)(1). The United States Supreme Court has held that pursuant to § 2000e-2(a)(1), a plaintiff may establish a violation of Title VII by proving that discrimination based on a protected designation has created a hostile or abusive work environment. *Meritor Savings Bank v. Vinson*, 477 U.S. 57, 66 (1986).

A plaintiff may prove Title VII discrimination through direct or circumstantial evidence. *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 345 (5th Cir. 2007) (citing *Laxton v. Gap, Inc.*, 333 F.3d 572, 578 (5th Cir. 2003)). Direct evidence is defined as that which, if believed, suffices to prove the fact of discriminatory animus without any inferences or presumptions. *See Nichols v. Loral Vought Sys. Corp.*, 81 F.3d 38, 40 (5th Cir. 1996). "In the context of Title VII, direct evidence includes any statement or written document showing a discriminatory motive on its face." *Fierros v. Texas Dept. of Health*, 274 F.3d 187, 195 (5th Cir. 2001) (citing *Portis v. First Nat'l Bank*, 34 F.3d 325, 329 (5th Cir. 1994)). In the absence of direct evidence, a Title VII plaintiff may establish causation by circumstantial evidence through the tripartite burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Portis*, 34 F.3d at 328 ("Because direct evidence is rare, a plaintiff ordinarily uses circumstantial evidence to meet the test set out in *McDonnell Douglas*, [which] establishes a prima facie case by inference.") Under the *McDonnell Douglas* framework, the plaintiff bears the initial burden of establishing a prima facie case of discrimination. *See McDonnell Douglas Corp.*, 411 U.S. at 802. A successful prima facie showing establishes a presumption of discrimination that the employer may rebut by presenting evidence of a legitimate, nondiscriminatory reason for the adverse action. *Id.* The plaintiff must

then offer sufficient evidence to create a genuine issue of material fact that the defendant's proffered reasons for its action are pretextual.  *Id.* at 804.

### 1.    Disparate Treatment and Hostile Work Environment Claim

### a)    Direct Evidence of Discrimination

Garza claims that LISD discriminated against him and perpetuated a hostile work environment because of his national origin.  He bases his claim on the assertion that his national origin is the only characteristic that makes him different from the rest of the VMT staff, "with some exceptions." [Dkt. No. 64-3 at 22].[2]  However, he provides no direct evidence to support his claims.

In its discrimination guidelines, the EEOC defines "discrimination based on national origin" to include actions that are undertaken "because an individual has the physical, cultural or linguistic characteristics of a national origin group."  *E.E.O.C.*, 496 F.3d at 401 (quoting 29 C.F.R. § 1606.1). The guidelines do not require that discrimination must be based on the victim's actual national origin.  *Id.*  Rather, "it is enough to show that the complainant was treated differently because of his or her foreign accent, appearance, or physical characteristics."   *Id.* (quoting Guidelines on Discrimination Because of National Origin, 45 Fed. Reg. 85,632, 85,633 (Dec. 29, 1980)).

Garza claims that "the staff at VMT knows that I am from 'across—del otro lado[3]'" because he teaches Spanish, promotes the Hispanic culture, defends diversity, and brings avocados and Mexican sodas to the parties.  [Dkt. No. 64-3 at 22].  While Garza may sincerely believe that the LISD staff was aware of his background and origin, the evidence that he presents to prove it is insufficient.  If Garza lived in a place and taught at a school where he was the only person, or even one of few people, of Hispanic origin, it might be easier for others to deduce his origin.  However, a large majority of Laredo's residents are of Hispanic origin, as are other LISD staff members.  [*See*

---

[2] While Garza has filed a response, it is neither verified nor supported by affidavit.  However, LISD has offered Garza's interrogatory answers, which the Court may properly consider.

[3] Which means, from "the other side."

Dkt. No. 64-8 at 3 (making reference to other Hispanic LISD employees)].  Bringing avocados and Mexican sodas to a party, both of which are widely available in Laredo, cannot lead a reasonable person to make conclusions about the origins of the person bringing them.  Moreover, defending diversity, teaching Spanish, and promoting the Mexican culture cannot be considered as reliable indicators of a person's origin, especially when evaluated in the context of Laredo's demographics.

Garza has also failed to point to any instance in which an employee of LISD made a negative statement about him being a Mexican national or living in Mexico or about Mexicans in general.  Because Garza has not demonstrated that the LISD staff had knowledge of his background and origin, he cannot possibly establish that LISD intentionally discriminated against him because of those characteristics.  "The ultimate question in every employment discrimination case involving a claim of disparate treatment is whether the plaintiff was the victim of intentional discrimination."  *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 153 (2000).  The Court finds that while the record contains extensive assertions of disparate treatment dating back ten years, [*see* Dkt. Nos. 46 at 1-2, 64-6 at 9], there is no direct evidence that LISD acted with the intention to discriminate against Garza because of his national origin.

### b)      Prima Facie Case of Discrimination

Because Garza failed to provide direct evidence of discrimination, he must establish—by a preponderance of the evidence—a prima facie case of discrimination in order to overcome LISD's motion for summary judgment.[4]  *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 252 (1981).

---

[4] In its Motion for Summary Judgment, LISD relies on *Fierros v. Texas Dept. of Health*, 274 F.3d 187 (5th Cir. 2001), to set out the four requirements that an alleged victim must establish for a prima facie case of discrimination:  (1) his membership in a protected class or his previous protected activity; (2) the occurrence of an adverse employment action; and (3) a "casual link" between his membership in the protected class or participation in the protected activity and the adverse employment action."  [*See* Dkt. No. 64 at ¶¶ 8-11 (citing *Fierros*, 274 F.3d at 191)].  However, the *Fierros* court explains that these are the requirements necessary "to establish a prima facie case of *retaliation* under 42 U.S.C.S. § 2000e-3(a)," and not the substantive provision under Title VII.  274 F.3d at 191 (emphasis added).  Thus, because these elements do not apply to this portion of Garza's claim, the Court will not consider LISD's prima facie analysis here.

To do so, Garza must provide evidence of the following: (1) that he is a member of a protected class; (2) that he was subjected to unwelcome harassment; (3) that the harassment complained of was based on race; (4) that the harassment affected a term or condition of his employment; and (5) that LISD knew or should have known about the harassment and failed to take prompt remedial action.  *See, e.g.*, *Turner*, 476 F.3d at 347; *Ramsey v. Henderson*, 286 F.3d 264, 268 (5th Cir. 2002). For the reasons stated below, the Court finds that Garza has failed to establish a prima facie case of a hostile work environment.

### (i)        *Membership in a Protected Class*

Garza attempts to prove that he is a member of a protected class by arguing that he teaches Spanish, promotes the Hispanic Culture, and defends the understanding of "Mexican culture for brotherhood."  [Dkt. No. 64-6 at 11].  Furthermore, he claims to be distinct because he retains "natural contemporary characteristics of [his] culture as well as the language [he] happen[s] to teach."  [*Id.*].  "For summary judgment purposes, all evidence produced by the nonmovant is taken as true and all inferences are drawn in the nonmovant's favor."  *Celestine*, 266 F.3d at 349 (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970)).  Garza's responses to interrogatories, offered by LISD establish that Garza is a U.S. citizen born in Laredo, Texas, but that with the exception of two years, he has lived in Nuevo Laredo, Mexico all of his life.  Garza asserts that while he is a "proud American," he is also a "proud Mexican."  These responses are sufficient to establish that Garza is a member of a protected class.

### (ii)        *Unwelcome Harassment*

Second, Garza must establish that he was subjected to unwelcome harassment.  The Court will assess Garza's allegations in light of the United States Supreme Court's "totality-of-the-circumstances" test.  Courts have interpreted Title VII's prohibition against discrimination in the terms, conditions, or privileges of employment to provide a cause of action to an individual who

suffers a discriminatorily hostile environment or workplace harassment. *See Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993). The Supreme Court has developed a test focusing on the "totality-of-the-circumstances" to determine whether an objectively hostile or abusive work environment exists. *Id.* Such a test focuses on the frequency of the discriminatory conduct, its severity, the degree to which the conduct is physically threatening or humiliating, and whether it unreasonably interferes with an employee's work performance. *Id.* Conduct sufficient to create a hostile work environment must be severe or pervasive. *Meritor*, 477 U.S. at 66. Although discriminatory verbal intimidation, ridicule, and insults may be sufficiently severe or pervasive to support evidence of a Title VII violation, simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory charges that can survive summary judgment. *Turner*, 476 F.3d at 347-48. Furthermore, a plaintiff must subjectively perceive the harassment as sufficiently severe or pervasive, and this subjective perception must be objectively reasonable. *Harris*, 510 U.S. at 21-22; *Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 270-71 (2001).

Garza bases his claim on the assertion that he would not have commenced this lawsuit had he not been singled out, or if the allegedly hostile environment "had not been created [or] promoted against him." [Dkt. No. 80, at 2]. In his interrogatory answers, Garza complains of the following conduct: (1) LISD deprived him of a new computer for over ten years and failed to supply him with print cartridges; (2) LISD issued him a "Letter of Warning" regarding some attendance rosters; (3) at one meeting, VMT's director Ernesto Guajardo invaded his personal space "in a physically defiant fashion;" (4) people left notes on a bulletin board referring to his repression; (5) a summary of a school document appeared in a local newspaper; (6) he was denied support for end of semester programs; (7) he was denied fundraising opportunities when other teachers were not; (8) a guitar department colleague took guitars away from students; (9) LISD denied him the opportunity to be placed on a committee; (10) LISD staff confiscated his students' surveys; (11) he was given an

anonymous guide on how to display the United States flag; and (12) he was assigned to an excessive number of students.[5]  [Dkt. No. 64-3].

In a letter written to the TCHR, Garza also complains of various situations including "trouble makers" somehow ending up in his class, [Dkt. No. 64-6 at 9]; classroom occupancy being in violation of fire safety norms, [*Id.*]; "reprisals and retaliation not only by the school administrator but also from the staff and students," [*Id.*]; allegations that the school administrator "rallied" students and staff against him, [*Id.*]; denial of basic courtesy greetings, [*Id.* at 10]; witchcraft hunts, [*Id.*]; an inquiry by a school administrator about whether he was speaking too quickly while Garza took notes, [*Id.*]; safety concerns about an improvised cafeteria blocking an exit, [*Id.*]; having to "deal" with Mr. Guajardo's girlfriend and school secretary, [*Id.*]; not having a computer, [*Id.*]; the principal canceling a rehearsal for a program about the Mexican Revolution, [*Id.* at 11]; the principal's denial of a small donation to fund a trip to Washington, D.C., [*Id.* at 12]; and a number of complaints about generalized administrative affairs, [*Id.* at 11-12].

LISD argues that Garza's factual allegations do not give rise to a valid complaint of a hostile work environment because the alleged harassment was not "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive work environment."  [Dkt. No. 64 ¶¶ 18-23].  While the Court does not question Garza's subjective beliefs, it does take into account the Fifth Circuit's admonition that "conclusory allegations, speculation, and unsubstantiated assertions are inadequate to satisfy" the nonmovant's burden in a motion for summary judgment. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1429 (5th Cir. 1996).  Garza claims that "daily

---

[5] This is not a comprehensive list of Garza's complaints.  However, the Court has thoroughly considered all of the evidence, including those claims that are not reproduced here.  Garza presents his allegations in a very disorganized fashion, making it difficult to determine whether a particular allegation falls under his hostile work environment claim or his retaliation claim.  At times, it appears as though he complains of the same action under both claims.  As such, the Court has made the best effort to separate his allegations, thereby addressing part of them here and part of them in the retaliation claim section of this order to avoid repetition.

exposure to a hostile and abusive work environment imposed on [him] a high degree of mental anguish compared to a combat zone and with consequences similar to a Post Traumatic Stress Disorder."  [Dkt. No. 46 at 6].  While it is possible for an individual to subjectively perceive the actions that Garza complains of as stressful and troubling, an objectively reasonable person would hardly equate those instances, individually or collectively, to a combat zone.  Many of Garza's complaints are indeed no more than isolated incidents and offhand comments, and many of them, like students being allowed to eat on the floor and block exits, do not even concern him directly. While Garza claims that these actions have taken place for over a period of ten years, he cannot point to their frequency, their objective severity, or even the context in which they occurred.  It is also difficult to fathom how some of these incidents would make Garza feel humiliated or how they would impact his work performance.  Simply put, Garza cannot elevate conclusory allegations, speculation, and unsubstantiated assertions to the level of an actionable hostile work environment.

Having reviewed Garza's claims pursuant to the "totality-of-the-circumstances" test, the Court finds that they do not amount to discriminatory charges that can survive summary judgment. At this point, Garza's prima facie case of discrimination fails.  However, even if Garza had been able to provide evidence of unwelcome harassment, his prima facie case nevertheless fails for the reasons stated below.

### (iii)    *Race-Based Harassment*

Third, Garza would have to establish that the harassment he complains of was based on race. The Court does not find that Garza has been singled out from other employees based upon his race, ethnicity, or national origin.  Rather, these complaints appear to be nothing more than irritation with VMT's administration and practices.  Speculation that the administration somehow "conspired" to place so-called troublemakers in his classroom and that it "rallied" students and staff against him, is nothing more than guesswork and therefore insufficient for a finding of discrimination.  Blocking an

exit with a make-shift cafeteria may indeed be a safety concern, but can hardly be construed as an action aimed at Garza, and much less because of his national origin or race.  Similarly, mere complaints that his rehearsals were canceled and that he was denied donations cannot possibly be actionable without evidence that Garza was specifically targeted and was treated differently from other employees—evidence that Garza fails to provide.

Furthermore, during his deposition, Garza stated that Principal Cox[6] treated him differently from the rest of the faculty.  [Dkt. No. 64-8 at 3].  When asked whether this treatment was of him personally or of all Hispanics versus Anglos or other races, he stated that the disparate treatment was of him personally.  [*Id.*].  Furthermore, Garza stated that from his own observations, other Hispanics were not treated differently.  [*Id.*].  As such, while he centers his claim on disparate treatment due to his national origin, Garza himself admits that no other Mexican American employees were subjected to the same treatment.

Thus, while Garza's complaints of harassment seem to permeate every aspect of his work environment, his allegations fall short of demonstrating the third element for a prima facie claim. While his complaints are numerous, Garza has simply not proven that his race was a motivating factor for the allegedly discriminatory actions.  As stated above, if LISD was unaware of Garza's national origin, that characteristic could not possibly have been the basis for its actions. Nevertheless, even if LISD did know about Garza's background, he has still failed to demonstrate the relationship between these actions and his race.  Furthermore, had LISD targeted other Hispanic employees, Garza would have a stronger claim.  However, by admitting that the alleged disparate treatment was of him personally, his race-based discrimination claim fails.  The Court does not consider that these incidents involve racial discrimination or that they are so severe or pervasive as

---

[6] In his pleadings, Garza refers to adverse treatment by two different principals—Guajardo and Cox.  However, Garza fails to provide dates or other information relating to these individuals, making it difficult to determine which principal engaged in what conduct.

to cause an abusive working environment.   As such, Garza's sporadic allegations of racial discrimination cannot support a Title VII claim.

### (iv)    Harassment Affecting a Term or Condition of Employment

To survive LISD's motion for summary judgment, Garza would also have to establish that the harassment affected a term or condition of his employment.   Garza argues that the "ultimate employment decision" necessary for relief is not applicable to his case because it has "recently been challenged and preceded by new cases."   [Dkt. No. 80 at 2].   While Garza is correct that in *White*, the Supreme Court abrogated the Fifth Circuit's approach in defining "adverse employment action," the Court expressly limited its holding to Title VII *retaliation* claims:

> The underscored words in the substantive [anti-discrimination] provision— "hire," "discharge," "compensation, terms, conditions, or privileges of employment," "employment opportunities," and "status as an employee"—*explicitly limit the scope of that provision to actions that affect employment or alter the conditions of the workplace. No such limiting words appear in the anti-retaliation provision.*   Given these linguistic differences, the question here is not whether identical or similar words should be read in pari materia to mean the same thing.   Rather, the question is whether Congress intended its different words to make a legal difference.   We normally presume that, where words differ as they differ here, "Congress acts intentionally and purposely in the disparate inclusion or exclusion."
>
> There is strong reason to believe that Congress intended the differences that its language suggests, for the two provisions differ not only in language but in purpose as well.   The anti-discrimination provision seeks a workplace where individuals are not discriminated against because of their racial, ethnic, religious, or gender-based status.   The anti-*retaliation* provision seeks to secure that primary objective by preventing an employer from interfering (through *retaliation*) with an employee's efforts to secure or advance enforcement of the Act's basic guarantees.   The substantive provision seeks to prevent injury to individuals based on who they are, i.e., their status.   The anti-*retaliation* provision seeks to prevent harm to individuals based on what they do, i.e., their conduct.
> . . . .
> Thus, purpose reinforces what language already indicates, namely, that the anti-*retaliation* provision, *unlike the substantive provision*, is not limited to discriminatory actions that affect the terms and conditions of employment.

*White*, 126 S. Ct. at 2411-13 (emphasis added) (internal citations omitted).  Thus, the Fifth Circuit's precedent recognizing only "ultimate employment decisions" as actionable adverse employment actions remains controlling for Title VII *discrimination* claims.

Garza continues working at VMT.  There is no evidence that he has been discharged, suspended, or demoted, or that any terms, conditions, or privileges of his employment have been affected.  While he claims that he has been denied certain privileges, Garza provides no evidence that he has been deprived of things included in the terms of his employment contract or of established privileges within his employment description.  As such, Garza has failed to establish that the alleged harassment affected a term or condition of his employment.

### (v)   *LISD's Knowledge about the Harassment and Failure to Take Prompt Remedial Action*

Finally, Garza would have to establish that LISD knew or should have known about the harassment and failed to take prompt remedial action.  Garza claims that he "complained of disparate treatment in more ways than one and for a long period of time."  [Dkt. No. 46 at 1].  However, in its May 6, 2004 letter to the Texas Workforce Commission, LISD stated that it was "not aware of any conduct against Mr. Garza which might constitute an adverse employment action which would support a claim of discrimination."  [Dkt. No. 64-6 at 3].  Furthermore, LISD stated that its administration was not aware of any recent complaints on behalf of Garza or of any grievances recently filed by him through LISD's established grievance procedure.  [*Id.*].

The Court finds no evidence that LISD was aware of the alleged harassment.  In fact, records of Garza's complaints to the school simply do not relate to the allegations that he currently makes.  Garza's recorded grievances include:  trespass on school property, [Dkt. No. 64-6 at 14]; the distribution of janitors' labor, [*Id.* at 16]; teachers not doing bus duty, [*Id.* at 19]; rescheduling of cancelled meetings, [*Id.* at 20]; students socializing in breakfast serving area, [*Id.* at 21]; events lacking educational benefit to the students, [*Id.* at 22]; staff members leaving meetings early and not

signing out, [*Id.* at 23]; staff members parking in student-designated parking areas, [*Id.* at 24]; staff members not accompanying groups in outside school activities, [*Id.* at 25]; fights among students, [*Id.* at 26]; and lack of staff participation in mandatory meetings, [*Id.* at 27].   Of the recorded complaints, the only one with any relation—albeit remote—to Garza's national origin, is an inquiry about whether an action was taken against two instructors "for interfering and creating chaos at [a] Hispanic Festival."  [*Id.* at 18].   Thus, Garza has failed to provide evidence that he alerted LISD of the alleged harassment against him or that LISD became aware of it through other means.

### c)   Conclusion

For the reasons stated above, the Court finds that Garza has failed to establish a valid claim of employment discrimination—either through direct evidence or via a prima facie case. Specifically, he failed to demonstrate the following:   (1) that he was subjected to unwelcome harassment; (2) that the alleged harassment was based on race; (3) that the harassment affected a term or condition of his employment; and (4) that LISD knew about the harassment and failed to take prompt remedial action.   As such, Garza did not create a rebuttable presumption that LISD unlawfully discriminated against him.   Accordingly, his claim fails.   Even viewing the facts in a light most favorable to Garza, the Court concludes that his list of complaints cannot, by themselves, support a claim of hostile work environment.   The Court finds that no rational juror could conclude that Garza suffered actionable discrimination.   Thus, LISD's summary judgment motion as to Garza's hostile work environment claim is hereby GRANTED.

### 2.   *Retaliation Claim*

### a)   Direct Evidence of Retaliation

In Title VII retaliation cases, determining who has the burden of proof will depend on the nature of the plaintiff's evidence supporting the causation element.   *Fierros*, 274 F.3d at 191.   In *Fierros*, the Fifth Circuit found as direct evidence of retaliation the plaintiff's affidavit stating that

the defendant had told her that she had been denied a pay increase because she filed a discrimination complaint against him.  *Id.* at 195.  Because Garza has not presented similar "direct" evidence of retaliation, the burden-shifting analysis applicable to his discrimination claim is also applicable to his Title VII unlawful retaliation claim.  *See Long v. Eastfield College*, 88 F.3d 300, 304 (5th Cir. 1996).  Thus, Garza bears the initial burden of establishing a prima facie case of retaliation pursuant to *McDonnell Douglas*.  *See* 274 F.3d at 191; s*ee also Gee v. Principi*, 289 F.3d 342, 345 (5th Cir. 2002); *Montemayor v. City of San Antonio*, 276 F.3d 687, 692 (5th Cir. 2001). "A *McDonnell Douglas* prima facie showing establishes an inference of retaliatory motive that the employer can rebut by producing evidence of a legitimate, non-retaliatory reason for the adverse action." *Fierros*, 274 F.3d at 191.

**b)**      **Prima Facie Case of Retaliation**

To establish a prima facie case of retaliation, Garza must demonstrate the following:  (1) that he engaged in a Title-VII protected activity; (2) that an adverse employment action occurred; and (3) that a "causal link" existed between plaintiff's participation in the protected activity and the adverse employment action.  *Id.*; *Raggs v. Mississippi Power & Light Co.*, 278 F.3d 463, 471 (5th Cir. 2002); *Evans v. City of Houston*, 246 F.3d 344, 351 (5th Cir. 2001).  The Court will now analyze whether Garza has provided sufficient evidence to establish a prima facie case of retaliation.

*(i)      Protected Activity*

An employee has engaged in activity protected by Title VII if he has either (1) opposed any practice made unlawful by Title VII, or (2) made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under Title VII.  42 U.S.C. § 2000e-3(a); *Grimes v. Tex. Dep't of Mental Health & Mental Retardation*, 102 F.3d 137, 140 (5th Cir. 1996).  Garza asserts that on October 17, 2002, he attended an LISD Board of Trustees meeting to denounce the

disparate treatment he had previously suffered, the poor management of school and human resources, possible unethical practices, possible disparate admission/discharge policies, possible violations of safety practices, possible issues of illegal hiring practices, and possible federal laws violations. [Dkt. No. 46 at 2]. Garza believes that thereafter, LISD engaged in unlawful retaliation by creating and promoting a hostile environment against him. [Dkt. No. 80 at 2].

LISD claims that Garza attended the meeting to "denounce the unethical conduct of Mr. Guajardo," and not to complain about LISD's allegedly discriminatory actions. [*See* Dkt. No. 64 ¶ 37]. Whatever his motive may have been, the transcript from the meeting reveals that Garza did not denounce a protected activity. Garza introduced his presentation to the Board of Trustees with an umbrella accusation that "we live under an environment of low morale, friction, favoritism, conflict of interest, ethical violations, discrimination and apparent violations of district, state and even federal laws." [Dkt. No. 64-7 at 5]. He then proceeded to criticize the appointment of the new principal, complained that VMT lost its vision, and requested the board to "appoint a special committee to evaluate and monitor the current situation in the school." [*Id.* at 4-6]. He also requested that the committee address questions relating to the school's vision, the frequency of meetings, the overseeing of directors, the school's recruiting criteria, the school's student expulsion policies, the lack of a designated area for students to eat, lack of supervision, and space allocation. [*Id.* at 6-7].

Even under the broadest interpretation of Garza's introductory statement or of the other issues that he presented to the Board of Trustees—issues completely unrelated to discriminatory actions based on national origin—this Court cannot find that Garza engaged in a protected activity in connection with his presentation at the school board meeting. However, because it is undisputed that Garza filed a complaint with the EEOC, the Court finds that Garza engaged in protected activity and so considers the next step.

### (ii)     *Adverse Employment Action*

To survive LISD's summary judgment motion, Garza would also have to identify an adverse employment action.  Prior to June 2006, the Fifth Circuit required that to establish a prima facie case of unlawful retaliation under 42 U.S.C. § 2000e-3(a), a plaintiff had to show, among other things, that the employer took an adverse employment action against him.  *See Mattern*, 104 F.3d at 705.  A plaintiff could show an adverse employment action only if he suffered an "ultimate employment decision[]," including "acts 'such as hiring, granting leave, discharging, promoting, and compensation.'"  *Id.* at 707 (quoting *Dollis v. Rubin*, 77 F.3d 777, 781-82 (5th Cir. 1995)).

However, in June of 2006, the Supreme Court examined the issue of retaliation, and in particular the degree of severity or seriousness required for the employer's conduct to be actionable.  *White*, 126 S.Ct. at 2410 (citing *Mattern*, 104 F.3d at 707).  In *White*, the Supreme Court rejected the Fifth Circuit's requirement that an employee must suffer an ultimate employment action and held that "a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, 'which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.'"  *Id.* at 2415.  While indicating that material adversity should be analyzed from the viewpoint of a reasonable employee, and thus use an objective standard, the Court also made clear that context matters.  *Id.*  Thus, the reasonable employee must possess the traits and be in the circumstances of the plaintiff.[7]  *Id.*  Because this Court does not find that Garza has any particular trait that would require individual characteristics to be taken into account, this Court will pursue the reasonable person analysis by placing him in the shoes of any other similarly situated teacher employed by LISD.

In *White*, the Court stated that in requiring that the retaliatory conduct must be "materially adverse," the Court's intent was to "separate significant from trivial harms," reaffirming its oft-

---

[7] For example, while a schedule change may have little effect on many workers, it may "matter enormously" to an employee with school-aged children.  *Id.* at 2415.

quoted admonition that Title VII is not "a general civility code for the American workplace." *Id.* (quoting *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80 (1998)).  Courts have held that "personality conflicts at work that generate antipathy and 'snubbing' by supervisors and co-workers are not actionable under 42 U.S.C. § 2000e-2(a)." *Id.*  Rather, the anti-retaliation provision seeks to prevent employers from interfering with "unfettered access" to Title VII's remedial mechanisms "by prohibiting employer actions that are likely to deter victims of discrimination from complaining to the [EEOC], the courts, and their employers." *Id.*  According to the Court, "petty slights, minor annoyances, and simple lack of good manners will not create such deterrence." *Id.*  In other words, "by focusing on the materiality of the challenged action and the perspective of a reasonable person in the plaintiff's position, [the Court believes] this standard will screen out trivial conduct while effectively capturing those acts that are likely to dissuade employees from complaining or assisting in complaints about discrimination." *Id.* at 2416.

The alleged retaliatory actions that Garza complains of are numerous.  Nevertheless, the alleged retaliatory conduct followed Garza's presentation at the board meeting, not his complaint to the EEOC.  However, because not all alleged retaliatory conduct is specified by date, the Court will nonetheless review this claim.

Garza cites to the following as some examples of the retaliatory actions that LISD allegedly engaged in and promoted as a result of his complaints:  (1) meetings were conducted in a biased, unprofessional, and hostile fashion; (2) meetings were called to blame him for the actions of the district including the loss of their buildings; (3) most of the staff stopped talking to him, acknowledging his presence, or displaying basic morning and afternoon courtesy greetings, placing him in a situation "to be described only as employment terrorism;" (4) school staff would scorn his students outside of his classroom; (5) the administration would give inaccurate information to students about him and would tell others that Garza was "not to be liked;" (6) the Academic

Department suspended some of his programs; (7) Guajardo would allow students to eat lunch and breakfast in his classroom, thereby leaving a mess; (8) his end-of-semester programs lacked attendance and support; (9) he was prevented from holding fundraising activities while other colleagues were able to do so; (10) janitors neglected to clean his classroom; (11) staff members attempted to persuade the principal to cancel the Hispanic Festival because, per Garza's suspicions, he was the co-coordinator and master of ceremonies; (12) custodians would handle the United States flag inappropriately; (13) safety officers would fail to observe safety issues;  (14) the steel chairs in his classroom were replaced with plastic ones while other academic colleagues have cushioned chairs in their classrooms; and (15) staff addressed him with sarcasm.  [Dkt. No. 46].

LISD argues that, assuming that all of the factual allegations are true, "the alleged conduct is not severe enough to fall within Title VII's purview," [Dkt. No. 64 ¶ 22], and none of the actions he challenges—either individually or cumulatively—"are materially adverse within the meaning of [*White*]."  [*Id.* ¶ 30].  Applying the *White* standard to Garza's claims, this Court finds that there is an insufficient evidentiary basis to support actionable retaliation.  Garza is correct in stating that an ultimate employment action is no longer required under current law.  [*See* Dkt. No. 80 at 2]. However, although more types of retaliatory conduct will be found actionable under *White* than under the standards previously applied by this circuit, this does not mean that all employer conduct will meet the standard.

The Court agrees with LISD that the actions Garza complains of are not so much materially adverse actions amounting to actionable retaliation as they are, in the words of the Supreme Court, "petty slights" and "minor annoyances."  *White*, 126 S. Ct. at 2415.  In its summary judgment motion, LISD presents three unpublished Fifth Circuit cases that, while not binding precedent, are instructive with regards to the new standard pronounced in *White*.  [Dkt No. 64 ¶ 28].  In one case, the court considered that a supervisor yelling at an employee was too trivial to be material under the

*White* standard. *See Peace v. Harvey*, 207 Fed. Appx. 366, 368 (5th Cir. 2006). In another case, vague comments by unnamed employees, a transfer to a different division, and relocating an employee from one desk to another did not rise to the level of material adverse action. *McCullough v. Kirkum*, 212 Fed. Appx. 281, 285 (5th Cir. 2006). Finally, LISD cites to *Grice v. FMC Techs. Inc.*, in which the Court found no actionable retaliation despite the employee's allegations that his employer watched him closely, wrongly accused him of forgery, falsified an incident report to place blame on him, and did not allow him to be a step-up lead in the absence of the Lead Assembler. 216 Fed. Appx. 401, 404 (5th Cir. 2007). Taking these cases as an illustration of how the Fifth Circuit has approached retaliation claims in light of the new *White* standard, this Court determines that Garza's complaints are less serious than, and at most equal to, the situations enumerated in these cases—situations that do not rise to the level of material adversity required for a finding of actionable retaliation.

In his deposition,[8] Garza tangles himself in a web of circular reasoning by failing to (1) differentiate between his general concerns with the school's management and his discrimination claims, and (2) decidedly explain that he was indeed targeted. [*See* Dkt. No. 64-8]. For example, Garza claims that Cox targeted him personally by citing to one incident when he and his students were celebrating Mexican Independence day by singing in the school's hallway. [*Id.* at 2]. On that occasion, Cox allegedly asked them to go outside because they were making noise, instead of applauding them, like Garza would have expected him to. [*Id.*]. To this Court and to any

---

[8] Garza complains that LISD fails to include a comprehensive transcript of his deposition but rather only "shares excerpts of Plaintiff's depositions [to Defendant's] convenience." [Dkt. No. 80 at 5]. According to Garza there are parts of the deposition not included with LISD's motion that allegedly include statements by colleagues that witnessed the unacceptable actions. [*Id.*]. An adversarial system of law relies on the skill of each advocate representing his or her party's positions. Justice is done when the most effective adversary is able to convince the judge or jury that his or her perspective on the case is the correct one. By citing cases to support its position, and providing the parts of the transcript that best helps further its arguments, LISD is doing nothing more than play by the system's rules. The plaintiff's role, whether *pro se* or not, is to fill in the gaps and demonstrate to the court that his position is a stronger one. The Court will make its determination based on the evidence before it and will not step into the advocate's shoes to do his job for him.

reasonable individual, Cox's actions would appear to be a normal reaction to what seemed to be a disturbance, rather than targeted retaliation.  Garza also argues that he was targeted because he was not given the school's old Apple computers so that he could form a lab in his classroom.  [*Id.* at 7].  However, Garza himself admits that he never requested the computers but insinuates that the administration should have given them to him nonetheless.  [*Id.* at 8].  The Court believes that an administration's failure to specifically cater to a teacher and provide him with accommodations that were not even requested does not amount to a materially adverse action.  Garza also attempts to demonstrate that he was singled out by claiming that his classroom was not cleaned like he requested.  [*Id.* at 10-12].  Again, neither a reasonable person nor this Court would believe that speculation about a particular classroom not being cleaned without knowledge of whether other faculty complained of the same amounts to a materially adverse action that warrants a finding of retaliation.  [*See id.*].

Furthermore, this Court would be hard pressed to find that Garza's other complaints, without more, are materially adverse actions—mere discomfort in his place of employment, lacking the basic tools to accomplish his mission, shortchanging students' access to technology and information, preventing collaborative projects, and subjecting him to stress and humiliation.  [*See* Dkt. No. 80 at 2].  Finally, complaints of sarcasm, like many of Garza's other accusations, do not seem to be any more than a cry of inconformity and dissatisfaction with LISD's policies and management.  Given their source and nature, if this Court were to decide that Garza's claims amount to materially adverse actions and unlawful retaliation, it would be diluting the purpose and effect of Title VII claims, and would act contrary to Supreme Court jurisprudence.  Garza appears to be an upset and dissatisfied employee, but certainly not one with an actionable claim of retaliation under established law.  As such, this Court finds that Garza has failed to meet the second requirement for a prima facie case of retaliation.

### (iii)    *"Causal Link"*

Finally, as the third element for a prima facie case, Garza must establish a causal connection between his participation in the protected activity and the adverse employment action, i.e, that the employer was motivated by a desire to retaliate.  *Shackelford v. DeLoitte & Touche, LLP*, 190 F.3d 398, 407-08 (5th Cir. 1999); *see also White*, 126 S. Ct. at 2416.  "A causal link is established when the evidence demonstrates that the employer's decision . . . was based in part on knowledge of the employee's protected activity."  *Medina v. Ramsey Steel Co., Inc.*, 238 F.3d 674, 684 (5th Cir. 2001) (internal quotations omitted).[9]  Garza contends that there should be no doubt about the existence of the causal link because "if [he] had not been singled out and treated with equality, dignity, and respect, if the hostile environment had not been created nor promoted against him, this process would not exist."  [Dkt. No. 80 at 2].  By engaging in this circular reasoning, Garza attempts to demonstrate that if he had not been a victim of the alleged retaliation, he would not have filed the lawsuit and because he did, the lawsuit itself is proof that the retaliation took place.

In situations where the plaintiff has no actual evidence of discrimination or retaliation but just some suspicious circumstances, "causal link" means that the protected expression and the adverse action "were not wholly unrelated."  *Medina*, 238 F.3d at 684.  Thus, something less than proof that the plaintiff would not have suffered an adverse employment action had he not engaged in the protected expression—something less than proof of but-for causation—will suffice to complete the prima facie case.  *Id.*; *see also Shackelford*, 190 F.3d at 409.  Garza claims that "the causal link should be logical" because he crosses the bridge from Mexico every day.  [Dkt. No. 80 at 5].  Given that the alleged actions do not rise to the level of being "materially adverse," no causal

---

[9] The causal link required by the third prong of the prima facie case does not rise to the level of the "but for" standard required for an ultimate finding of retaliation.  *Fierros*, 274 F.3d at 191-92; *Gee*, 289 F.3d at 345 (explaining that a plaintiff "need not prove that her protected activity was the sole factor motivating the employer's challenged decision in order to establish the causal link element of a prima facie case") (citation omitted).

link could possibly exist.  However, even if Garza met the second prong of a prima facie case, the Court fails to see a causal link between the actions complained of and Garza's protected activity. Therefore, this Court concludes that Garza has not shown a causal connection between any materially adverse action and his complaints and thus fails to meet the third element for a prima facie case.

### c)      Conclusion

The inferences and speculation that Garza presents as a substantial basis for his claim are insufficient to establish a prima facie case of retaliation.  Having failed to satisfy this requirement, there is no presumption of retaliation which LISD would otherwise be required to rebut.  *See Montemayor*, 276 F.3d at 693.  As such, LISD's summary judgment motion as to Garza's retaliation claim is hereby GRANTED.

### D.      Title VII Fees Under 42 U.S.C. § 2000e-5(k)

#### 1.      *Attorney's Fees*

Defendant also petitions the Court to "consider the amount and reasonableness of costs and attorney's fees to be awarded to Defendant, pursuant to 42 U.S.C. § 2000e-5(k) and Fed. R. Civ. P. 11."  [Dkt. No. 54 ¶ 51].  A district court in a Title VII action may allow the prevailing party, other than the EEOC or the United States, a reasonable attorney's fee, including expert fees.  42 U.S.C. § 2000e-5(k).  Although attorney's fees should be awarded to prevailing plaintiffs in all but special circumstances, the same principle does not apply to prevailing defendants.  *See Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 417, 418-19 (1978).  A court may, in its discretion, award attorney's fees to a prevailing defendant in a Title VII case only if it finds that plaintiff's action was frivolous, unreasonable, or without foundation, even though not brought in subjective bad faith.  *Id*. at 421.  A suit is frivolous only if it is "so lacking in arguable merit as to be groundless or without foundation . . . ."  *Jones v. Texas Tech University*, 656 F.2d 1137, 1145 (5th Cir. 1981); *see also*

*Walker v. City of Bogalusa*, 168 F.3d 237, 240 (5th Cir. 1999).  While Garza failed to meet his burden to establish that LISD discriminated and retaliated against him, the Court does not believe that he pursued his claims in a frivolous or unreasonable manner.  LISD has not advanced any argument as to why it should be entitled to attorney's fees within Title VII's limitations.  As such, the Court concludes that LISD is not entitled to recover attorney's fees and denies its request.

### 2.      Costs

A prevailing party is entitled to recover costs other than attorney's fees as a matter of course unless a federal statute, the Federal Rules of Civil Procedure, or a court order provides otherwise. Fed. R. Civ. P. 54(d)(1); *see Wilson v. City of Plano*, 160 F.3d 211, 212 (5th Cir. 1998) (per curiam).  As stated, Rule 54(d) would seem to conflict with the Supreme Court's standard in *Christiansburg*.  However, the Fifth Circuit has rejected the argument that Title VII disturbs the usual rule for costs.  *See Trevino v. Holly Sugar Corp.*, 811 F.2d 896, 906 (5th Cir. 1987) (citing *Lewis v. NLRB*, 750 F.2d 1266, 1279 (5th Cir.1985); *Hill v. J.C. Penney Co.*, 688 F.2d 370, 375 (5th Cir. 1982)).  Accordingly, the Court holds that LISD, as the prevailing party, is entitled to recover its taxable costs.

## III.   CONCLUSION

For the reasons stated herein, the Court finds that Garza has failed to establish the existence of a genuine issue of material fact for trial.  Thus, given the evidence in the record supporting LISD, and the fact that Garza has not met his burden, this Court sees no reason to subject the parties to further litigation.  Having concluded that Garza's allegations of national origin discrimination and retaliation did not constitute adverse employment actions, either individually or cumulatively, the Court **GRANTS** LISD's Second Motion for Summary Judgment as to Garza's employment discrimination and retaliation claims under Title VII.  Additionally, the Court **DENIES** LISD's

request for attorney's fees and **GRANTS** its request for court costs.  The Court will issue judgment

by separate document pursuant to Fed. R. Civ. P. 58.

IT IS SO ORDERED.

DONE this 10th day of March 2008, in Laredo, Texas.

_____
Micaela Alvarez
UNITED STATES DISTRICT JUDGE

TO INSURE PROPER NOTICE, EACH PARTY WHO RECEIVES THIS ORDER SHALL
FORWARD A COPY OF IT TO EVERY OTHER PARTY AND AFFECTED NON-PARTY
EVEN THOUGH THEY MAY HAVE BEEN SENT ONE BY THE COURT.